# ORIGINAL

# In the United States Court of Federal Claims

No. 10-318C
(Filed December 18, 2014)

**FILED**

DEC 1 8 2014

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * * * * * * * * *
                                        *
ROBERT LOUIS SALTER, JR.,               *
                                        *
                    Plaintiff,          *
                                        *
        v.                              *
                                        *
THE UNITED STATES,                      *
                                        *
                    Defendant.          *
                                        *
* * * * * * * * * * * * * * * * * * * * *
```

Alleged breach of fiduciary duties;
Bureau of Prisons; inmate trust fund
account; Inmate Financial
Responsibility Program, 28 C.F.R.
§ 545.11(d); payment of court-
ordered fine; coercion or duress;
unlawful or improper conduct
standard; summary judgment for
the government, RCFC 56.

*Robert Louis Salter*, Little Rock, Arkansas, *pro se*.

*Lauren S. Moore*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Deborah A. Bynum*, Assistant Director, all of Washington, D.C, for defendant. *Marli J.P. Kerrigan*, Assistant General Counsel, Federal Bureau of Prisons, of counsel.

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

This is an action seeking money damages for alleged breaches of fiduciary duties. Plaintiff Robert Louis Salter, Jr., proceeding *pro se*, argues that the government violated its duty as trustee of his funds held in an inmate trust fund account by coercing his agreement to allow the government to withdraw funds from that account to pay court-ordered fines. Additionally, plaintiff asserts that the government officials who obtained his consent had an improper financial interest in this result, as their compensation was allegedly based in part upon it. Finally, plaintiff alleges that the Bureau of Prisons (BOP), in administering this program, improperly usurped judicial authority by setting the rate and timing of his payments.

The government has moved for summary judgment on all three grounds for relief asserted by Mr. Salter, under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). Defendant argues that no evidence supports plaintiff's claim that the prison officials who obtained his consent were compensated based on prisoners' rates of consent; that plaintiff has failed to show conduct that would amount to coercion or duress; and that plaintiff has failed to identify conduct on the part of the BOP which amounts to the improper imposition or modification of court-ordered fines. For the reasons stated below, the government's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

On July 26, 2004, plaintiff, Robert Louis Salter, was convicted of unlawful possession of a machine gun and failing to appear in court. Def.'s Mot. Summ. J., App. (Def.'s App.) at 1–3. Mister Salter was sentenced to 151 months of imprisonment and a $50,000 fine. *Id.* On August 5, 2004, plaintiff entered the custody of the BOP. *Id.* at 2. At some point after his incarceration began, an inmate trust fund account was opened for his benefit.[1] Earnings from Mr. Salter's prison employment, as well as gifts from his mother, were deposited into this account. Compl., App. (Pl.'s App.) G, I. On February 22, 2005, Mr. Salter agreed to participate in the Inmate Financial Responsibility Program (IFRP). Def.'s App. at 7. The IFRP is a program under which federal prisoners agree to make payments towards their court ordered fines, or other financial obligations, out of their inmate trust fund accounts. *See* 28 C.F.R. § 545.11.

With the exception of a brief period in June 2005, when he refused to sign a new waiver, Mr. Salter continued to consent to participate in the IFRP from 2005 until 2011. Def.'s App. at 7, 9–14. His participation in the program terminated in December of 2011 when the remainder of his fine was paid in one large lump sum. *Id.* at 7, 15. Consent is required for an inmate to participate in the IFRP --- but if consent is withheld, or if an inmate refuses to comply with the program after he has agreed to participate, various consequences may result. 28 C.F.R. § 545.11(d)(1)–(9), (11).[2] These consequences are as follows:

(1) Where applicable, the Parole Commission will be notified of the inmate's failure to participate;

---

[1] Though it is clear from the record that such an account was opened, *see* Compl., App. I at 1–2, the record fails to show when this account was opened.

[2] The parties disagree vehemently about the proper label for these consequences. Plaintiff maintains that these consequences are "punitive penalties," Compl. at 2, while defendant describes these consequences as the denial of "certain benefits" and not the imposition of "inmate discipline," Def.'s Mot. for Summ. J. (Def.'s Mot.) at 9. The label applied is irrelevant to the disposition of the government's motion.

(2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);

(3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

(4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;

(5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;[3]

(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refusees shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

. . .

(11) The inmate will not receive an incentive for participation in residential drug treatment programs.

28 C.F.R. § 545.11(d)(1)–(9), (11) (2013).[4]

On May 25, 2010, Mr. Salter filed a complaint in this court. Compl. Plaintiff alleges that because he was threatened with the imposition of the above-cited consequences, his consent to participate in the IFRP was obtained under duress, in violation of the government's fiduciary duty as trustee of his inmate trust fund account. *Id.* at 1–2. He contends that the BOP officials who obtained his consent had an improper motive for doing so, as their compensation was allegedly based on the rate of inmate participation in the program --- creating a conflict of interest

---

[3] Positions with UNICOR, also known as Federal Prison Industries, Inc., *see* 28 C.F.R. § 345.11, provide inmates with job training opportunities, *see Core Concepts of Fla., Inc. v. United States*, 327 F.3d 1331, 1333 (Fed. Cir. 2003), and are thus apparently sought after by prisoners.

[4] Sub-paragraph ten is reserved for future use. *See* 28 C.F.R. § 545.11(d)(10).

contrary to the government's fiduciary duties. *Id.* at 2–3. Finally, plaintiff claims that by adjusting the rate, and timing, of his payments under the IFRP, the BOP officials running the program have assumed power that can only be exercised by an Article III judge. *Id.* at 3.

For its part, the government argues that plaintiff has failed to substantiate his claims, and that his allegations do not entitle plaintiff to recover as a matter of law. The government argues that plaintiff lacks standing to challenge the IFRP because, in order to have such standing, he would need to have refused to participate in the program and been subject to the consequences listed above. Def.'s Mot. Summ. J. (Def.'s Mot.) at 9–10. Concerning the merits of Mr. Salter's claims, defendant first argues that no fiduciary duties were violated by the BOP when it conditioned plaintiff's eligibility for certain benefits upon his agreement to participate in the IFRP. Def.'s Mot. at 10–12; Def.'s Supp'l Br. at 1–4. Second, the government argues that Mr. Salter has been unable to offer any evidence supporting his claim that the prison officials who obtained his consent to participate in the IFRP were compensated based on their success in these efforts. Def.'s Resp. to Pl.'s Supp'l Br. in Opp'n to Def.'s Mot. for Summ. J. at 2–3. Third, defendant argues that the modifications to the timing, and amount, of Mr. Salter's repayment were lawful and did not involve BOP setting the amount of a criminal fine. Def.'s Mot. at 12–13. The government's motion has been fully briefed and oral argument has been heard.

## II. DISCUSSION

### A. Applicable Legal Standard

Summary judgment is appropriate only if, based on materials in the record, a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a), (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987); *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 743 (2005). Material facts are those "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. A dispute over facts is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*

### B. Analysis

The Court begins its analysis, as it must, *see Steel Co. v. Citizens for a BetterEnv't*, 523 U.S. 83, 94–102 (1998), with the government's jurisdictionally-based argument for judgment --- that Mr. Salter lacks standing to object to the threatened consequences because he has not actually suffered them. Defendant relies on a district court opinion stating that a prisoner must refuse participation in

the IFRP and suffer the consequences before he can challenge the legality of those consequences. Def.'s Mot. at 9 (citing *Shaw v. Daniels*, No. 10-cv-00234, 2010 WL 4628905, at *3 n.4 (D. Colo. Nov. 8, 2010)). On this basis, defendant claims that because Mr. Salter has voluntarily participated in the IFRP since 2005, he therefore lacks standing to challenge the program. *Id.* at 10. In response, Mr. Salter points out that his challenge is not to the IFRP itself; rather, his claim is that by threatening to impose the consequences for non-compliance, the BOP has coerced him into agreeing to release his funds, thus breaching its fiduciary duties. Pl.'s Resp. to Def.'s Mot. Summ. J. (Pl.'s Opp'n) at 4. Moreover, he also notes that he did in fact refuse to participate in the program, and was thus exposed to the consequences for nonparticipation, *id.,* a fact which was noted by the government in its motion for summary judgment, Def.'s Mot. at 3 (citing Def.'s App. at 7). Plaintiff's view of the matter is the correct one --- he is not challenging the BOP's authority to impose the threatened consequences, but rather their use to induce agreement to participate in the IFRP. It appears beyond question that Mr. Salter has standing to challenge alleged violations of the fiduciary duties owed him by the government trustees of his funds.

Before addressing plaintiff's claim concerning the consequences of a refusal to participate in the IFRP, the Court will consider the government's arguments for judgment on his other two claims, which are simpler matters. In his complaint, Mr. Salter alleged that BOP employees' salaries and employment evaluations were "based, in part, upon the level of prisoner participation in the I.F.R.P." Compl. at 2. This allegation rested on a Sixth Circuit opinion which reported that at injunctive relief hearings "evidence was adduced to establish that prison employees were informed that their employment evaluations and determinations regarding salary increases would be based in part on the level of participation in the inmate financial responsibility program in that particular correction facility." *Washington v. Reno*, 35 F.3d 1093, 1096 (6th Cir. 1994).[5]

In arguing for summary judgment, the government relied on the declaration of Allia J. Lewis, who had been employed by the BOP since mid-1994 and was its Senior Correctional Programs Specialist since April 2011. *See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. at 2; Def.'s App. at 4, 7 (Lewis Decl. ¶¶ 1, 7). According to Ms. Lewis, "BOP employees do not financially benefit from the level of inmate participation in the IFRP." Def.'s App. at 7 (Lewis Decl. ¶ 7).[6] Plaintiff

---

[5] Those particular facts were irrelevant to the issues before the Sixth Circuit, which concerned the constitutionality of a policy regarding the telephone calls of inmates and whether money in a trust fund resulting from commissary sales could be spent to implement that policy. *See Washington*, 35 F.3d at 1099–103.

[6] Plaintiff has moved to strike the Lewis declaration, arguing that she failed to explain her responsibilities with the BOP during the time period in which the alleged breaches of fiduciary duties occurred. Pl.'s Mot. to Strike at 2. But Ms.

countered that a district court opinion dealing with how BOP officials are evaluated for purposes of promotion and compensation noted a job element entitled "Implements Operations or Programs," which he presumes must include the IFRP. Pl.'s Comments, ECF No. 38, at 2–3 (citing *Richetts v. Ashcroft*, No. 00 civ. 1557, 2003 U.S. Dist. LEXIS 3878, at *5 n.2 (S.D.N.Y. Mar. 17, 2003)). After Mr. Salter was allowed discovery on this topic, *see* Order (Dec. 3, 2012); Order (May 1, 2013), he argued that the "Implements Operations and Programs" job element, which in 2006 was replaced with the element "Performs Professional Duties," is the vehicle by which BOP employees had their compensation tied to IFRP participation rates, consistent with the *Washington v. Reno* dicta. Pl.'s Supp'l Br. at 2–4.

The government is correct that plaintiff has failed to offer any actual evidence in support of this claim. "[M]ere assertions" are not enough to create a genuine issue of material fact which will prevent the granting of summary judgment. *Sweats Fashions*, 833 F.2d at 1562–63 (quoting *Pure Gold, Inc., v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed. Cir. 1984)). Nor can a trial court take judicial notice of, or even be persuaded by, facts found in another proceeding based on a different record. *See Allison v. United States*, 80 Fed. Cl. 568, 596 (2008); *[M.S.B.] by Bast v. Sec'y of Health & Human Servs.*, 117 Fed. Cl. 104, 124 (2014). Even if the referenced statement in *Washington v. Reno* --- which predated Mr. Salter's controversy by more than a decade --- were more than mere dicta, it would not be sufficient to produce a dispute over a genuine issue of material fact. *See* RCFC 56(c) (discussing the types of evidence that can prove or disprove the existence of a disputed genuine issue of material fact). Moreover, the personnel evaluations of the relevant employees, which were reviewed by the Court *in camera*, lend no support to Mr. Salter's claim that the employees at issue were evaluated based on their ability to secure prisoner's consent to participate in the IFRP. *See* Order (Aug. 8, 2013), ECF No. 48. In sum, plaintiff has offered no evidence to support his claim that BOP officials are compensated or evaluated based on IFRP participation rates, and summary judgment on this issue in favor of the government is thus warranted.[7]

---

Lewis has properly alleged that her statements were "based on [her] own personal knowledge and on information made available to [her] in the performance of [her] official duties," and these duties included "coordinating and monitoring the [IFRP]." Def.'s App. at 4–5 (Lewis Decl. ¶ 1). The government further explained that her duties from 2004 to 2011 involved the IFRP. Def.'s Resp. to Pl.'s Mot. to Strike at 1–2. The motion to strike is thus **DENIED**.

[7] Plaintiff also relies on an affidavit from a fellow inmate, William Julian, stating that a BOP official referenced a memorandum indicating what Mr. Julian's monthly IFRP payment should be. Pl.'s Opp'n at 10 (citing Pl. App. J). But even read in the light most favorable to Mr. Salter, *see Nat'l Am. Ins. Co. v. United States*, 498 F.3d

Moving on, the government refutes plaintiff's claim that BOP officials improperly usurped a judicial function by setting the timing and amount of his fine payments. Defendant argues that when the sentencing court imposes a fine, which is due immediately and in full, the BOP has not usurped a judicial function when it adjusts payment schedules. Def.'s Mot. at 12–13 (citing *United States v. Sawyer*, 521 F.3d 792, 796–97 (7th Cir. 2008)). Plaintiff fails to address this argument in his response to the government's motion for summary judgment. *See* Pl.'s Opp'n at 2–11. Judgment in favor of the government on this issue could be entered on this basis alone. But the Court further notes that Mr. Salter's claim that the BOP improperly adjusted the timing or amount of the payments specified in his judgment is based on a misreading of the sentencing order. The district court order which imposed the fine states that "if not paid immediately, any unpaid financial penalty imposed shall be paid during the period of incarceration at a rate of *not less than* $25 quarterly, or 10% of defendant's quarterly earnings, whichever is greater." Pl.'s App. H at 2 (emphasis added). The sentencing court thus made the fine payable immediately, and therefore, the BOP's decisions were in accord with the district court's order and therefore proper. *See Sawyer*, 521 F.3d at 796.[8] Thus, summary judgment on this issue in favor of the government is warranted.

The Court now returns to the question of whether the threatened consequences of an inmate's refusal to participate in the IFRP constitute a breach of the government's fiduciary duties as trustee of an inmate's trust fund account, under 31 U.S.C. § 1321(a)(21). This issue is purely a question of law. Of the eleven consequences, three in particular applied to plaintiff's circumstances --- a loss of furlough opportunities, a loss of performance or bonus pay, and a more stringent limitation on monthly commissary spending. *See* 28 C.F.R. § 545.11(d)(2)–(3), (6).[9] Plaintiff argues that such potential consequences were used to improperly coerce his participation in the IFRP --- with the result that his earnings and gifts from his mother were diverted to pay his court-ordered fine, rather than to be used for his benefit, such as for commissary purchases. *See* Pl.'s Opp'n at 7–8; Compl. at 1–2, 6–10.

Plaintiff's legal theory begins with the reasonable proposition that the creation of a trust account to hold the funds of an inmate, which is statutorily

---

1301, 1303 (Fed. Cir. 2007), this statement has nothing to do with the evaluation or compensation of BOP officials.

[8] The Court also notes that it is not clear that this allegation amounts to a claim that a fiduciary duty has been breached, since the allegation does not directly concern the administration of his trust fund account.

[9] These were identified by Mr. Salter during the oral argument held by telephone on October 25, 2012.

recognized, *see* 31 U.S.C. § 1321(a)(21), and pursuant to regulation, *see* Pl.'s App. A, Department of Justice Circular No. 2244, imposes fiduciary responsibilities on the BOP. Although the government in this matter took a litigation position to the contrary, *see* Def.'s Mot. to Dismiss at 1–5, Mr. Salter included with his complaint a copy of a May 22, 1995 Department of Justice Office of Legal Counsel (OLC) memorandum which acknowledged these fiduciary obligations. *See* Pl.'s App. B at 8.[10] This OLC memorandum noted that an earlier opinion of that office stated "[a] withdrawal of [Prisoners Trust Fund moneys] without the inmate's consent . . . would seem to constitute a breach of the terms of the trust." *Id.* at 9.[11]

Plaintiff next invokes the rule that a beneficiary's agreement to release trust funds for a purpose other than his benefit must be voluntary, not coerced or the product of duress. Compl. at 9–11 (citing, *inter alia*, 76 Am. Jur. 2d *Trusts* § 338). He then concludes, citing cases involving alleged breaches of trust duties and other cases concerning the voluntariness of waivers, that the use of the BOP's power to withhold privileges amounts to impermissible coercion or duress. *Id.*; *see also* Pl.'s Resp. to Def.'s Supp'l Br. (Pl.'s Supp'l Resp.) at 4–7. The key language that Mr. Salter relies upon comes from an 1877 Supreme Court opinion:

> To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary . . . there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment.

*Radich v. Hutchins*, 95 U.S. 210, 213 (1877); *see* Pl.'s Supp'l Resp. at 4 (quoting *Radich*); Compl. at 9 (quoting *Ingram v. Lewis*, 37 F.2d 259, 264 (10th Cir. 1930 (quoting *Radich*, 95 U.S. at 213)).

In its motion for summary judgment, the government counters that the IFRP has been universally upheld when challenged, although this is usually in the context of a due process claim. *See* Def.'s Mot. at 10–11 (citing, *inter alia*, *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002), *Johnpoll v. Thornburgh*, 898 F.2d

---

[10] The Court notes that Mr. Salter's well researched and cogently written submissions were of a much higher quality than is typical for *pro se* litigants. Indeed, he succeeded in defeating the government's motion to dismiss the case. *See Salter v. United States*, No. 10-318, 2011 WL 6890645, at *2 (Fed. Cl. Dec. 29, 2011).

[11] Although one cannot tell from the copy of the OLC memorandum submitted by plaintiff due to the absence of nearly an entire paragraph, the referenced opinion was a memorandum attached to a letter to the Comptroller General dated August 23, 1968. *See* Fiduciary Obligations Re: Bureau of Prisons Commissary Fund, 19 Op. O.L.C. 127, 128 (1995).

849, 851 (2d Cir. 1990), and *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir. 1989)). The Third Circuit, for instance, after noting that even "inmates' constitutional rights may be impinged by a prison regulation if it is reasonably related to legitimate penological interests," *James,* 866 F.2d at 630 (citing *Turner v. Safley,* 482 U.S. 78, 107 (1987)), found that the IFRP "would appear to be reasonably related to a legitimate penological interest in encouraging inmates to rehabilitate themselves by developing a sense of financial responsibility," *id.* Similarly, the Second Circuit has held that "the IFRP program serves valid penological interests." *Johnpoll,* 898 F.2d at 851.

After the Court requested further briefing on what constitutes coercion or duress in breach of the fiduciary duties owed by a trustee to a beneficiary, *see* Order (Oct. 26, 2012), the government filed a supplemental brief discussing case law from our court, the Federal Circuit, and the mutual predecessor of both, the Court of Claims, *see* Def.'s Supp'l Br. at 1–4. These opinions concerned the voluntariness of waivers, releases, and other agreements generally, rather than pressure applied to a beneficiary by a trustee. In the one case involving a trust, a mother who created the trust for her adopted children threatened to disinherit one financially irresponsible son --- the plaintiff in that case --- unless he agreed to transfer his interests to another trust set up for the benefit of his family. *Carpenter v. United States,* 4 Cl. Ct. 705, 708–12 (1984), *aff'd* 790 F.2d 91 (Fed. Cir. 1986). Our court found no coercion, duress, or undue influence as a matter of law, *id.* at 720, since "plaintiff's mother had a legal right to disinherit him and withdraw her financial assistance" and "[t]hreats to do what one has a right to do, are not coercion or duress unless such actions are deemed to violate fundamental notions of fair dealing," *id.* at 719 (citing *Sys. Tech. Assocs., Inc. v. United States,* 699 F.2d 1383, 1387–88 (Fed. Cir. 1983)). Those fundamental notions were "certainly" not violated when his "mother was attempting to ensure the financial stability of [plaintiff's] family." *Id.*

The other opinions cited by the government, most of which were relied upon in *Carpenter,* 4 Cl. Ct. at 718–19, discuss in other contexts whether an agreement was the product of coercion or duress. In a case concerning the voluntariness of a tax payment, the Court of Claims explained, "'it is only the threat of a wrongful or unlawful act that may constitute duress.'" *Collins v. United States,* 209 Ct. Cl. 413, 421–22 (1976) (quoting *Beatty v. United States,* 144 Ct. Cl. 203, 206 (1958)). That opinion cited an earlier case which considered a sale of land to the federal government and held: "It is not duress for a party to do or threaten to do what it has a legal right to do." *Beatty v. United States,* 144 Ct. Cl. 203, 207 (1958). And in a case involving a contract modification, the Court of Claims held that "[s]ome wrongful conduct must be shown, to shift to defendant the responsibility for bargains made by plaintiff under the stress of financial necessity." *La Crosse Garment Mfg. Co. v. United States,* 193 Ct. Cl. 168, 177 (1970); *see also Johnson, Drake & Piper, Inc. v. United States,* 209 Ct. Cl. 313, 322 (1976).

The government added to these cases a Ninth Circuit opinion which found that the adverse consequences of non-participation did not render an inmate's IFRP agreement involuntary. Def.'s Supp'l Br. at 3 (discussing *United States v. Lemoine*, 546 F.3d 1042, 1049–50 (9th Cir. 2008)). That court explained, "[t]he use of incentives to encourage compliance in a rehabilitative program does not render it unconstitutional or unlawful, however." *Lemoine*, 546 F.3d at 1049 (citing *McKune v. Lile*, 536 U.S. 24, 39 (2002)). The Ninth Circuit determined that an inmate "had no entitlement, constitutional or otherwise, to any of the benefits" at issue. *Id.*

Plaintiff responded that the cases cited by the government did not concern the fiduciary duties that a trustee owes a beneficiary, *see* Pl.'s Supp'l Resp. at 1–3, and characterized defendant's argument as an "attempt[ ] to dilute the fiduciary relationship to that of a commercial transaction," *id.* at 3.[12] He then quoted from an opinion from New York's highest court, written by its then-Chief Judge Benjamin Cardozo, which concerned the duties two members in a joint venture owe each other. *Id.* at 4 (citing *Meinhard v. Salmon*, 249 N.Y. 458 (1928)). That court described "the level of conduct for fiduciaries" as being "at a level higher than that trodden by the crowd," and explained: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place." *Meinhard*, 249 N.Y. at 464. Mister Salter argued that the Supreme Court's *Radich* decision, noted above, reflects "[t]hese heightened standards," Pl.'s Supp'l Br. at 4, in defining "coercion and duress" as the use of "power possessed . . . over the person or property of another" when there is "no other means of immediate relief than by making the payment." *Radich*, 95 U.S. at 213.

But *Radich* did not involve a trust or other fiduciary relationship, and instead concerned the claim of a cotton exporter that he was coerced into paying Confederate officials (in cash and kind) for an export permit. *Id.* at 212. The Supreme Court found his transaction to be voluntary, as the seizure of his wares was not threatened. *Id.* at 212–13. Plaintiff cited another Supreme Court case for the propositions that when duress is "sufficient to influence the apprehensions and conduct of a prudent business man, payment wrongfully induced" is not voluntary, and that duress "exerted by one clothed with official authority" requires "less evidence of compulsion or pressure." Pl.'s Supp'l Br. at 5 (quoting *Robertson v. Frank Bros. Co.*, 132 U.S. 17, 23 (1889)). But the latter point was justified by the *prima facie* presence of such things as exactions of "illegal fees" or "excessive charges," and the case concerned not fiduciary responsibilities, but rather an importer acquiescing in overvaluations by a customs officer "to avoid an onerous

---

[12] The Court notes that only two of the cases discussed by Mr. Salter in his response --- *Meinhard v. Salmon*, 249 N.Y. 458 (1928) and *Ingram v. Lewis*, 37 F.2d 259 (10th Cir. 1930) --- concerned a fiduciary relationship. *See* Pl.'s Supp'l Resp. at 4–7.

penalty" that was illegal and to secure the release of his goods. *Robertson*, 132 U.S. at 23–24.

The one opinion plaintiff relied upon which concerned duress imposed by a trustee, *Ingram v. Lewis*, 37 F.2d 259 (10th Cir. 1930), to be sure, quoted the passage he highlighted from *Radich*. *See Ingram*, 37 F.2d at 264 (quoting *Radich*, 95 U.S. at 213). The *Ingram* case involved allegations that unscrupulous trustees threatened to withhold from the beneficiary his income from a trust, which was all he had to live upon, unless he signed a release transferring the bulk of the trust's assets to them. *Id.* at 262. The Tenth Circuit found these allegations sufficient to entitle the beneficiary to a trial on his request for an accounting, *id.* at 264, explaining that it would be "legal duress for a trustee to refuse to turn over property to his beneficiary rightfully entitled thereto, except upon condition of signing a release," *id.* at 263.

Plaintiff's theory, it seems, is that the BOP's threatened imposition of commissary spending limits, or restrictions on work or furlough opportunities, are akin to a private trustee withholding property from a beneficiary in financial straits. Where plaintiff's theory goes awry is his supposition that the duties and standards of behavior applied to government trustees must be identical to those governing private sector trustees under the common law. For this, Mr. Salter quotes the opinion of a district court that "[i]t is well established that conduct of the Government as trustee is measured by the same standards applicable to private trustees." *Manchester Band of Pomo Indians, Inc. v. United States*, 363 F. Supp. 1238, 1245 (N.D. Cal. 1973); *see* Pl.'s Opp'n at 6.

But this district court opinion suffers from two problems. First, the quoted proposition relies upon a passage from a Supreme Court opinion which suggests no such thing. *See United States v. Mason*, 412 U.S. 391, 398 (1973). Second, the Supreme Court has more recently made it quite plain that its "limited" past use of a private trustee analogy "does not mean the Government resembles a private trustee in every respect." *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323 (2011). Rather, because of "the unique position of the Government as sovereign," a trust administered by it "is defined and governed by statutes rather than the common law." *Id.*; *see also Shoshone Indian Tribe v. United States*, 672 F.3d 1021, 1039–40 (Fed. Cir. 2012). Questions of federal fiduciary duties usually arise in the context of tribal trusts, organized under a "sovereign function" and "often structured" by the government "to pursue its own policy goals." *Jicarilla Apache*, 131 S. Ct. at 2323–24. Thus, the "fiduciary role" that is undertaken might be one "not as a common-law trustee but as the governing authority enforcing statutory law." *Id.* at 2324.

These same considerations apply in Mr. Salter's case. The basis for the relationship between plaintiff and the BOP is the sovereign function of incarcerating an inmate, the government's enforcement of federal criminal statutes.

Unlike a private trustee, who voluntarily agrees to administer a trust and assumes the fiduciary responsibilities imposed by the common law, the BOP administers inmate trust fund accounts as a practical accommodation to parties with whom it deals not by choice. While it would almost certainly be coercive for a private trustee to prevent a beneficiary from spending money from any source, or to interfere with a beneficiary's ability to secure employment, the loss of such liberties is the point of imprisonment. If private trustees were to treat a beneficiary as if he were an inmate, this would undoubtedly be coercive, but that is the starting point of plaintiff's relationship with the BOP. The standard for determining whether participation in the IFRP is the product of coercion or duress must take into account the coercion that is inherent in the nature of incarceration, to be faithful to the statutory framework under which the fiduciary role has been assumed.

Accordingly, merely preventing an inmate from using his own property while incarcerated unless he participates in the IFRP is not necessarily coercive, although this would violate the standards applicable to a private trustee, *see Ingram*, 37 F.2d at 263. The Court is persuaded that the BOP's actions should be scrutinized under the standards for determining duress adopted by the Court of Claims and the Federal Circuit --- conduct must be "unlawful" or otherwise "wrongful" to render an agreement involuntary. *See Sys. Tech.,* 699 F.2d at 1387–88; *Collins*, 209 Ct. Cl. at 421–22; *La Crosse Garment*, 193 Ct. Cl. at 177. Plaintiff has not identified any authority supporting the notion that the threatened consequences of non-participation in the IFRP, 28 C.F.R. § 545.11(d)(1)–(9), (11), are illegal or wrongful.

And to the contrary, the Supreme Court has held that a prison program, which threatened nearly-identical consequences if incarcerated sex offenders refused to confess to their past sexual offenses, did not constitute coerced or compelled self-incrimination in violation of the Fifth Amendment. *See McKune v. Lile*, 536 U.S. 24, 30–31, 39–43, 48 (2002) (plurality opinion); *id.* at 48–51 (O'Connor, J., concurring in judgment). Refusal resulted in the automatic curtailing of "visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures . . . and other privileges," *id.* at 31, but the plurality found these to be merely "certain perquisites that make [an inmate's] life in prison more tolerable," *id.* at 42, and the concurring justice found the resulting "changes in living conditions" to be "minor," *id.* at 51. The plurality noted "the axiom that, by virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted," *id.* at 40, and found that "[a]n essential tool of prison administration . . . is the authority to offer inmates various incentives to behave," *id.* at 39. If the Supreme Court does not believe that these threatened consequences amount to compulsion when self-incrimination is the goal, the Court cannot see how they can be considered coercive in this case.

As was discussed earlier, the IFRP has been repeatedly upheld as serving the valid penological objective of rehabilitating inmates. *See Lemoine*, 546 F.3d at 1049;

*Johnpoll*, 898 F.2d 851; *James*, 866 F.2d at 630.  Plaintiff has provided no reason for doubting this.  If an inmate does not generally enjoy rights to particular work opportunities or to unlimited commissary purchases, he cannot loosen these restrictions on his liberty by opening a trust fund account and invoking common law fiduciary duties.  As a matter of law, plaintiff's participation in the IFRP was not coerced, and the government's motion for summary judgment is accordingly **GRANTED**.

## III.  CONCLUSION

For the reasons stated above, the government's motion for summary judgment is **GRANTED**.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Judge